# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Karl Mansoor

v.

Cynthia Favret

June 13, 2001

Case No. (Law) 00A84

BY JUDGE EDWARD L. HOGSHIRE

This suit arose from the failure of Cynthia Favret, Ph. D., to produce medical records pursuant to the repeated requests of Karl Mansoor. This Court found that Plaintiff's requests were made in accordance with Virginia Code § 8.01-413 and, therefore, he should have been provided with the records in question. The plaintiff filed the instant motion to recover attorney's fees and costs incurred in forcing the production of these documents. In order for the plaintiff to prevail on the motion, this Court must find that the defendant acted willfully or arbitrarily in failing to provide the documents in question in a timely manner. For the following reasons, based on the testimony at the evidentiary hearing, the briefs submitted to the Court, the evidence of record, and a reading of the statutes in question, the Court finds that the defendant willfully failed to provide said records and, therefore, the Motion is granted.

## Statement of Facts

In connection with pending litigation, Plaintiff made a written request that Defendant produce his psychological fitness evaluation which she administered for the Albemarle County Police Department on January 11, 2000. After Defendant failed to respond in a timely manner, Plaintiff's

counsel made a second request via certified mail on January 26, 2000. Defendant again failed to respond in a timely manner. Both requests were made in accordance with Virginia Code § 8.01-413 which allows a health care provider fifteen days to turn over properly requested records. Defendant's initial response, made untimely on February 18, 2000, simply stated that the "request for release of this information should be directed to [the County's] attention." (Plaintiff's Affidavit, Exhibit D.)

Meanwhile, in accordance with Virginia Code § 8.01-413, Plaintiff sought relief from this Court in the form of a subpoena *duces tecum.* Relief was granted and the subpoena was served in March 6, 2000. Just before the expiration of the subpoena deadline, the defendant issued a full response to the request. In a letter to the plaintiff and a subsequent Motion to Quash, the defendant expressed concern with providing the information; she stated she was "bound by clinical judgment and ethical obligations to manage this information in the best interest of the client (in this case, Mr. Mansoor)." (Plaintiff's Affidavit, Exhibit F.) The defendant indicated that the records should be given to a qualified mental health professional because "direct release of this report to Mr. Mansoor would be likely to jeopardize his mental status and potentially place him at risk." (Plaintiff's Affidavit, Exhibit F.) Plaintiff thereafter attempted to have the report sent to his personal physician, Dr. Brian Hocking. Defendant did not respond to this request until March 24, 2000, finally releasing some of the materials to Hocking. The underlying data used to create the psychological fitness was not included in the produced materials, contrary to disclosure requirements in Plaintiff's repeated requests and this Court's subpoena. Plaintiff consequentially made a specific request for these documents on April 4, 2000, to which the defendant failed to respond. Plaintiff thereafter filed a Notice to Show Cause and a Motion for Attorney's Fees and Costs.

The first hearing on this matter occurred on May 12, 2000, wherein the defendant urged that the plaintiff was not a "patient" and therefore no duty to supply the records existed. Specifically, Defense counsel argued that the statutory definition of "patient" and "provider" did not include the relationship that existed between Plaintiff and Defendant. During this hearing, the underlying data used to make the psychological evaluation was presented to the plaintiff. At the final hearing on November 15, 2000, there was some dispute regarding the disclosure of another piece of data, which appeared to be similar, but distinguishable, from the earlier data provided to the defendant. In any event, the full set of documents was not provided until, at the earliest, the May 12, 2000, hearing and at the latest, the November 15, 2000, hearing.

*Applicable Law*

This case is governed by Virginia Code § 8.01-413 which reads in pertinent part:

> Copies of hospital, nursing facility, physician's, or other health care provider's records or paper shall be furnished within fifteen days of such request to the patient or his attorney upon such patient's or attorney's written request, which request shall comply with the requirement of Subsection E of § 32.1-127.1:03. However, copies of a patient's records shall not be furnished to such patient where the patient's treating physician has made part of the patient's record a written statement that in his opinion the furnishing to or reviewing by the patient of such records would be injurious to the patient's health or well-being, but in any such case such records shall be furnished to the patient's attorney within fifteen days of the date of such request. . . .
>
> If the court finds that a hospital, nursing facility, physician or other health care provider willfully refused to comply with a written request, made in accordance with subsection B, either by willfully or arbitrarily refusing . . . the court may award damages for all expenses incurred by the patient to obtain such copies, including court costs and reasonable attorney's fees. . . .
>
> Health care provider, as used in this section shall have the same meaning as provided in § 32.1-127.1:03. . . .

*Analysis*

A. *Defendant Willfully Failed to Provide the Medical Records*

According to her testimony on November 15, 2000, the defendant had read Virginia Code § 8.01-413 prior to any request by the plaintiff. As such, arguments that she acted unwittingly or blindly are without merit.

The defendant's failure to respond for nearly thirty-eight days to the initial request and twenty-three days to the second request violate Virginia Code § 8.01-413. Defendant's purported belief that the County would provide such documents does not negate her failure to provide them herself. The request was made of the defendant, not of the County.

Defendant's March 22, 2000, letter to the Plaintiff's attorney, in lieu of production, also violates Virginia Code § 8.01-413. That letter expressed

concerns that disclosure of the medical records could be injurious to the plaintiff's health or well-being. Interestingly, Defendant voiced no such concerns when suggesting that Plaintiff attempt to obtain the records directly from Albemarle County in previous correspondence. (Plaintiff's Affidavit, Exhibit D.) Assuming *arguendo* that the Defendant believed in good faith that disclosure of the documents to the plaintiff "would be likely to jeopardize his mental status and potentially place him at risk[,]" the defendant was nonetheless obliged to provide the records to the plaintiff's attorney under Virginia Code § 8.01-413.

The March 22, 2000, letter also referenced American Psychological Association guidelines which stipulate that the release of the requested documents should be made to "qualified mental health professional(s), trained in the proper interpretation and analysis of such data, who as such, are able to communicate the results to the examinee in a therapeutic and supportive context." (Plaintiff's Affidavit, Exhibit F.) Just as these Ethical Guidelines are not binding on the Court, they neither create nor supplement the Commonwealth's laws and do not mitigate the defendant's duty to produce the records under Virginia Code § 8.01-413. Even if these guidelines took precedence over law, plaintiff's retention of such a professional did not result in production.

Defendant's familiarity with Virginia Code § 8.01-413, her repeated violations of it, her inconsistent and insufficient justifications for ignoring it, and her refusal to produce all of the documents once the request was conformed to her conditions, amount to a willful refusal to comply with the defendant's requests.

## B. *Statutory Interpretation Defense*

At the first hearing on May 12, 2000, Defendant averred that the relationship between herself and the plaintiff was not covered by Virginia Code § 8.01-413 and, therefore, she was not obliged to comply by releasing the records. The defendant argued that she was not a "health care provider" for the purpose of the section and alternatively the plaintiff was not a "patient."

As to the defendant's status as a health care provider, Virginia Code § 8.01-413 indicates that the applicable definition is found in Virginia Code § 32.1-127.1:03. This section in turn directs readers to the definition of health care provider given in Virginia Code § 8.01-581.1 which reads: "'Health care provider' means (i) a person, corporation, facility, or institution licensed by this Commonwealth to provide health care or professional services as a . . .

clinical psychologist. . . ." The defendant's title, with which she concluded each piece of correspondence in the record, is "Licensed Clinical Psychologist/Forensic Examiner." Considering she practices in Williamsburg, Virginia, the defendant is assumed to be licensed by the Commonwealth. Therefore, the defendant fits the definition of a health care provider as it is used in Virginia Code § 8.01-413.

As to the plaintiff's status as a patient, the controlling statute on which the requests were based, Virginia Code § 8.01-413, does not define "patient" nor does it direct readers to another section in the Code for a definition. It is logical to again turn to Virginia Code § 32.1-127.1:03 for guidance. This section defines a "patient" as a person "who receives health services from a provider" and it defines "health services" as any "examination or diagnosis" of a person. Alternatively, Virginia Code § 8.01-581.1 states, "'Patient' means any natural person who receives or should have received health care from a licensed health care provider. . ." and "'Health care' means any act or treatment performed or furnished . . . by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis. . . ." Thus, under the definition of either section, the plaintiff would clearly be considered a "patient."

Defendant raises two additional arguments regarding statutory interpretation. First, she states that Virginia Code § 8.01-581.1 governs the definitions for all terms in the statute because it is referenced once by the controlling section. Not only is this method of statutory interpretation faulty, but, as described above, the definition of this provision creates a duty for the defendant to provide the records in question. Second, Defendant responded to this Court's request for interpretive authority by providing the Court with a dictionary definition of the word "patient." While the common usage and meaning can be resorted to in defining an ambiguous term, I see no such ambiguity here. Nothing in the statute suggests that a person examined for purely evaluational purposes should be denied the rights provided to "patients" as defined by the Code. Thus, despite the manner in which Defendant classified her relationship with Plaintiff, the relationship is clearly covered by Virginia Code § 8.01-413 and, therefore, she was obliged to comply with the law by releasing these records.

## Conclusion

Based on the foregoing, I find for the plaintiff and find further that the $3,768.00 in fees and costs are reasonable, as documented in Plaintiff's Affidavit. Therefore, the Motion for attorney's fees and costs is granted.

Plaintiff's counsel, Deborah C. Wyatt, is requested to prepare the final order, noting the exception of Defendant's counsel, William N. Watkins, to the Court's ruling.